Clio KING, Appellant,

v.

UNITED STATES of America, Appellee.

No. 8075.

United States Court of Appeals Fourth Circuit.

Argued May 30, 1960.

Decided Sept. 7, 1960.

James R. Nance, Fayetteville, N. C. (Nance, Barrington & Collier, Fayetteville, N. C., on the brief), for appellant.

Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BARKSDALE, District Judge.

SOBELOFF, Chief Judge.

The conviction of Clio King under an indictment charging a violation of the federal liquor laws,[1] rests entirely upon evidence taken from his home under a search warrant. The sole point on this appeal, which if sound is sufficient to require a reversal, is that the underlying

1. Title 26 U.S.C.A. § 7206(4).

affidavit was invalid and, hence, the search warrant was likewise invalid.

Accompanied by two federal enforcement officers, someone falsely representing herself as Ruth or Rutha Douglas appeared before a United States Commissioner and made an affidavit accusing Clio King of Red Springs, North Carolina, the appellant here, of possessing in his home a quantity of illicit whiskey. Thereupon the Commissioner issued a warrant authorizing the search of King's home. The warrant recited that it was issued upon the supporting affidavit of Rutha Douglas.

A timely motion was made to suppress the evidence turned up in the search. After a hearing, the motion was overruled by the District Judge, who, in sole reliance upon this evidence, convicted King and sentenced him to imprisonment for one year and one day.

In the District Court, the defendant's attack upon the warrant was supported by the testimony of Ruth Douglas, whom he called as a witness. She testified that she did not make the affidavit purportedly made by her.[2] Both government agents who were present when the affidavit was made testified that Ruth Douglas, the witness in the District Court, was not the woman whom they accompanied to the Commissioner's office and who swore to and signed the affidavit. The Commissioner himself testified that another woman then in the court room, Kate McRae, resembled the affiant, but that Ruth Douglas certainly was not the person who appeared before him.

Ruth Douglas lived in the Red Springs community where Clio King lived. She testified that she had never heard of another Ruth Douglas living in the community. Kate McRae, who the Commissioner thought resembled the woman who falsely represented herself as Ruth Douglas and signed the affidavit, does not live in the same town, but nearby Rennert,

North Carolina. Called to the witness stand, McRae likewise denied having made the affidavit. She suggested that she had heard of a Douglas family who lived near Shannon, North Carolina, and intimated that a member of that family might have made the affidavit. However, no such person was produced then or, so far as anyone has revealed, was such a person located later. In these circumstances it is not reasonable to require the defendant to scour the world to prove a negative. The short of it is that an oath by a person claiming a spurious identity is the sole basis for the warrant and the search. The uncontroverted facts admit of no other interpretation.

█ The Fourth Amendment to the Constitution of the United States explicitly requires that "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation * * *.*" (Emphasis supplied.) Rule 41(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., requires that the warrant "shall state the grounds or probable cause for its issuance and the *names of the persons whose affidavits have been taken in support thereof.*" (Emphasis supplied.) The constitutional requirement of an oath or affirmation would be effectively eroded away if fictitious oaths were permitted. The statutory mandate that the affiant's name *shall* be stated is not satisfied by a false name, given by an unknown individual. It has been repeated many times that the requirements for issuance of a search warrant must be strictly adhered to and that the Fourth Amendment "guaranties are to be liberally construed to prevent impairment of the protection extended." Grau v. United States, 1932, 287 U.S. 124, 128, 53 S.Ct. 38, 40, 77 L.Ed. 212. Judge Soper, speaking for this court, recently stated:

"It has been laid down again and again that the prohibition of the Fourth Amendment against unrea-

2. The person who appeared before the federal officers identified herself as either "Ruth" or "Rutha" Douglas. It is not clear which. The affidavit was signed "Rutha" Douglas, but the witness at the hearing was "Ruth." However, other than the Ruth Douglas who appeared at the hearing, no other Ruth or Rutha Douglas has been located.

sonable searches and seizures must be rigidly enforced and that the procedure for the issuance of a search warrant which gives effect to the amendment must be scrupulously observed." Baysden v. United States, 4 Cir., 1959, 271 F.2d 325, 327.[3] To uphold the warrant in the instant case would be completely inconsistent with the above admonition.

The demand of Rule 41 for the affiant's name is in furtherance of the Fourth Amendment and is not without purpose. It has been said that someone must take the responsibility for the facts alleged, giving rise to the probable cause for the issuance of the warrant, Giles v. United States, 1 Cir., 1922, 284 F. 208, 214; United States v. Keleher, 1924, 55 App.D.C. 132, 2 F.2d 934; and the defendant should be apprised of the name of that person, Howard v. State, 1952, 199 Md. 529, 87 A.2d 161. When the affiant is cloaked in secrecy there is no one who can be held responsible.

Another reason for naming the affiant is to enable an aggrieved person to probe and challenge the legality of the warrant. Section 41(e) of the rule makes this plain.[4] Giving a name other than the affiant's is not compliance. It is established law that the warrant would be fatally defective if no name were mentioned. United States v. Kaplan, D.C. S.D.Ga.1923, 286 F. 963; Howard v. State, supra. It would be an anomaly if it could be said that the rule has been obeyed when, instead of omitting the affiant's name altogether, another person's name is deceptively substituted. If it should be held that the use of a mere sham has the effect of validating the warrant, then the aggrieved party would be frustrated in his effort to discover who the affiant is and to test the legality of the search, as authorized by the rule. The rule's remedial procedure would be vitiated.[5]

This is not an instance of an affiant merely misspelling his name, or using a nick-name by which he is sometimes known rather than his real name, or in the absence of fraudulent purpose adopting a name informally assumed without resort to legal proceedings to change his name.[6] Manifestly, here is a willful ef-

---

3. See also: Gouled v. United States, 1921, 255 U.S. 298, 304, 41 S.Ct. 261, 65 L.Ed. 647; Henderson v. United States, 4 Cir., 1926, 12 F.2d 528, 529, 51 A.L.R. 420; Benton v. United States, 4 Cir., 1934, 70 F.2d 24, 26; Worthington v. United States, 6 Cir., 1948, 166 F.2d 557, 562; United States v. Borkowski, D.C.S.D. Ohio 1920, 268 F. 408, 410.

4. Although the majority, perhaps, of state cases have held that the aggrieved person cannot challenge the truthfulness of the facts alleged by the affiant, Smith v. State, 1948, 191 Md. 329, 62 A.2d 287, 5 A.L.R.2d 386, and Annotation, 5 A.L.R.2d 394, the rule in the federal courts is otherwise, and false facts given by the affiant will vitiate the warrant and search. Steele v. United States (No. 1), 1925, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757; United States v. Goodwin, D.C. S.D.Cal.1924, 1 F.2d 36; United States v. Boscarino, D.C.W.D.N.Y.1927, 21 F.2d 575; Atlanta Enterprises v. Crawford, D.C.N.D.Ga.1927, 22 F.2d 834; United States v. Napela, D.C.N.D.N.Y.1928, 28 F.2d 898; United States v. Nagle, D.C. N.D.N.Y.1929, 34 F.2d 952; United States v. Henderson, D.C.D.C.1954, 17

F.R.D. 1; United States v. Bell, D.C. D.C.1955, 17 F.R.D. 13; Lerner v. United States, D.C.Mun.App.1959, 151 A. 2d 184. In a case like the present one, it would be difficult for the truthfulness of the facts in the affidavit to be challenged as the affiant is unknown.

5. An individual whose person or premises are searched as a result of false information given by the affiant has a civil cause of action against that person. Where the latter is undisclosed, there is no remedy.

6. Although there is language in a few cases cited by the Government which seems to support its position, those cases are distinguishable from the present one. In United States v. McKay, D.C.Nev. 1924, 2 F.2d 257, the court seemed to approve an affiant's use of an assumed name as long as it was not done with a "fraudulent purpose." Hirschfeld v. United States, 7 Cir., 1931, 54 F.2d 62, is a case where the affiant actually used two different names, "Roberts" and "Robinson," and was known by both. In Dixon v. United States, 5 Cir., 1954, 211 F.2d 547, it was found as a fact that the af-

fort to mask the true source of the information, contrary to the letter and spirit of the law. It must prove ineffective.[7]

The appellant's conviction and sentence, based upon evidence secured by the unlawful search, must be set aside.

Reversed.

fiant did use his correct name and not a fictitious one.

7. Since the search is invalid because the constitutional and statutory requirement as to the affidavit has not been met, we have no occasion to discuss or decide under what circumstances information furnished by informers to officers may be made the basis of warrants, as this is not such a case. See: Jones v. United States, 1960, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697; Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.